# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEBY JOHN, | ) |
| Claimant, | ) No. 13 CV 7043 |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Jeby John ("Claimant") brings this action under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), seeking review of the Commissioner's decision to deny Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.]

Claimant moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 21.] The Commissioner also moved for summary judgment. [ECF No. 25]. For the reasons stated below, Claimant's Motion for Summary Judgment is granted, and the Commissioner's Motion for Summary Judgment is denied. This matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

In June of 2010, Claimant filed an application for DIB, alleging a disability onset date of December 30, 2004. (R. 17.) The SSA denied the application initially on September 16, 2010

and upon reconsideration on November 18, 2010. *Id.* Claimant then requested a hearing before an administrative law judge ("ALJ"), which was held on March 15, 2012. (R. 31, 114.) At the hearing, Claimant, who was represented by counsel, appeared and testified. *Id.* A medical expert ("ME") and a vocational expert ("VE") also testified at the hearing. *Id.*

On April 16, 2012, the ALJ issued a written decision. (R. 17-24.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 24.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. 19.) At step two, the ALJ found that Claimant had the severe impairments of hip replacement and hip/joint pain. *Id.* The ALJ found that Claimant's history of diabetes, cholesterol, hypertension, ulcers, sleep apnea and bilateral shoulder pain did not rise to the level of being severe impairments under step two of the process. *Id.* The ALJ also found that Claimant had the non-medically determinable impairments of a pulmonary embolism and deep vein thrombosis; however, because these two impairments were not established until after the date last insured, they were not considered to be severe impairments under 20 CFR 404.1520(c). (R. 19-20.) At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 20.)

Before proceeding to step four of the sequential process, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Claimant could stand and/or walk for two hours during an eight-hour workday, and that Claimant could sit for six hours during an eight-hour workday. (R. 20.) The ALJ further determined that Claimant occasionally could climb ramps and stairs, but never could

climb ladders, ropes, or scaffolds; occasionally could balance, kneel, and crawl, but never crouch; occasionally could push or pull with the right lower extremity; and should avoid moderate exposure to dangerous moving machinery and unprotected heights. *Id.*

At step four, the ALJ found Claimant was unable to perform any of his past relevant work. (R. 23.) At step five, however, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 23-24.) Specifically, the ALJ found Claimant could work as a Hand Packer or Assembler. *Id.* Because of these determinations, the ALJ concluded that Claimant was not under a disability as defined in the Social Security Act at any time from his alleged onset date to the date last insured. (R. 24.)

Claimant sought review of the ALJ's decision with the Social Security Appeals Council, which was denied on June 4, 2013, making the ALJ's opinion the final decision of the Commissioner. (R. 6.) Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, the ALJ must articulate her analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

### III. DISCUSSION

Claimant argues that the decision of the Commissioner should be reversed for three reasons. First, the ALJ failed to consider a letter from Claimant's treating physician, Dr. Balagopal Keralvarma, dated March 26, 2012, eleven days after the hearing (the "Letter") that was relevant evidence in support of Claimant's allegation that he was disabled prior to the date last insured.[1] Second, the ALJ did not properly analyze the medical opinion of Dr. Keralavarma. Third, the ALJ did not sufficiently account for all of the Claimant's limitations in the ALJ's residual functional capacity assessment. The Court agrees that the ALJ erred by not considering all of the evidence in the record, namely Dr. Keralavarma's post-hearing Letter, and that error was not harmless. Therefore, remand is appropriate.

Claimant's date last insured was December 31, 2009. (R.17.) On April 19, 2010, Claimant presented to Community Hospital with complaints of swelling in his right leg. (R.

---

[1] Claimant's attorney submitted the Letter to the ALJ on April 9, 2012, seven days before the ALJ's decision was issued.

4

675.) Dr. Keralvarma's April 2010 notes indicate that Claimant informed the treating cardiologist at that time that the swelling had been occurring for the past six months. (R. 467.) After a venous Doppler test was run on Claimant's right leg, he was diagnosed with deep vein thrombosis ("DVT"). (R. 676.)

Subsequently, Dr. Keralavarma completed a medical source statement ("MSS"), in which he noted a diagnosis of DVT. (R. 938.) He opined that Claimant would need to elevate his legs more than 30 degrees when he sits for long periods of time due to increased swelling. (R. 940.) Dr. Keralavarma also indicated that the earliest date the description of the symptoms and limitations applied was April 2010, four months after Claimant's date last insured. (R. 941.)

The ALJ gave Dr. Keralavarma's MSS little weight "because [none] of the opinions reflected in the[] statement[] apply to the period prior to the date last insured." (R. 22.) Instead, the ALJ accorded significant weight to the ME, who testified at the hearing that he couldn't "find any evidence that the swelling was there prior to" April 2010. (R. 22, 85.) The ME also testified that "it's possible that [the Claimant] may have had some swelling of the leg that wasn't picked up. But the record here states that [the swelling] started in 2010." (R. 86.) Finally, the ME stated that it was reasonable for Claimant to elevate his leg to thirty degrees to relieve swelling, but that he could work without doing so. (R. 90-91.) The ALJ noted in his opinion that the ME "*had the opportunity to review the entire record,* and his testimony that it is not unreasonable or dangerous for the claimant to work without elevating his leg is consistent with the evidence." (R. 22.) (emphasis added).

In reality, the ME did not have the opportunity to review the entire record. In particular, the ME did not review Dr. Keralavarma's Letter which was submitted after the administrative

5

hearing. The Letter contained a medical opinion from Dr. Keralavarma supplemental to his initial MSS. The letter stated in full:

> The patient's symptoms of swelling of the lower extremity had been happening on and off for about six months prior to his admission to the hospital. It would be reasonable to consider that these symptoms could be because of venous thromboembolic events which remained undiagnosed until he sought medical attention in April 2010.

(R. 943.)

In his written opinion, the ALJ did not mention the Letter or give any indication that he considered the Letter in making his ultimate decision. Nor did the ALJ give any indication that the additional evidence was ever shown to the ME. The ALJ also did not explain why the ME's medical findings still should be accorded significant weight even after the Letter was in the record. The ME had indicated it was possible Claimant may have had some swelling prior to April 2010 but there was nothing in the record to that effect. After Dr. Keralavarma submitted his Letter, the record contained a statement from a medical source that Claimant had experienced swelling of his lower extremity about six months before April 2010, while he was still insured.

Social Security regulations require an ALJ to consider all relevant evidence in the record, including medical opinions. 20 C.F.R. § 404.1527(c); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); *see also Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."); *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) (stating that an ALJ is required to "consider *all* relevant evidence, including the evidence regarding the plaintiff's condition at present" when determining whether plaintiff was disabled as of the date last insured). Although it is unnecessary for an ALJ to provide a complete written evaluation of every medical opinion in the record, he does have an obligation to articulate enough analysis in his opinion to build an

accurate and logical bridge from the evidence to his conclusion. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013); *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

An ALJ is generally directed to give a treating physician's opinion greater weight than that of a non-treating physician, such as a medical expert. C.F.R. § 404.1527(c)(1). The opinions of treating physicians are considered so important because "they are likely to be the medical professionals most able to provide a detailed, longitude picture" of the claimants medical impairments and offer "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* § 404.1527(c)(2). Because of this value, an ALJ cannot completely ignore the opinion of a treating source. *Henderson v. Barnhart*, 205 F.Supp.2d 999, 1013 (E.D. Wis. 2002). Similarly, "an ALJ may not ignore an entire line of evidence that is contrary to her findings." *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999).

Here, the Letter was important evidence. The ME's testimony at the hearing that there was no evidence to indicate swelling prior to the date last insured was based on a record that did not contain the Letter. Because the Letter supports the proposition that Claimant was suffering from DVT prior to the date last insured, it is possible that the ME's findings would have been different had he considered the Letter in his analysis. However, it is not the role of the Court to speculate if or how the Letter would have changed the ME's findings. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

Further, the ALJ's decision only mentions Dr. Keralavarma's initial MSS, and not once mentions the Letter. The Commissioner does not argue that the Letter was not part of the record. An ALJ is required "to minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). Even when a

treating physician's opinion is not given controlling weight, "the ALJ is not permitted to simply discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014).

When important evidence is ignored, it is impossible for a reviewing court to determine whether the ALJ's decision rests upon substantial evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). If an ALJ's decision leaves the court questioning whether important evidence was fully considered, the court will reverse. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The Commissioner's argument is not that the Letter was unimportant, but rather that there is no medical evidence in the record that is contemporaneous with the period of time during which Claimant was insured that would corroborate Dr. Keralavarma's retroactive diagnosis. [ECF No. 25, at 6-7.] The Commissioner, however, misconstrues the legal standard for considering a treating physician's retroactive diagnosis in a Social Security proceeding. In *Estok v. Apfel*, 152 F.3d 636 (7th Cir. 1998), the case on which the Commissioner relies, the Seventh Circuit stated, "A retrospective diagnosis may be considered *only if it is corroborated by evidence* contemporaneous with the eligible period." *Id.* at 640 (emphasis added). In that same year, the Seventh Circuit clarified the standard, stating that "[w]hat is required is contemporaneous corroboration of the [disability] . . . not necessarily contemporaneous *medical* corroboration." *Wilder v. Apfel*, 153 F.3d 799, 802 (7th Cir. 1988); *see also Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment.") (quotation and citation omitted)); *Free v. Astrue*, 2011 WL 2415012, at *9 (N.D. Ill. June 10, 2011) (holding that Claimant's testimony after his date last insured was sufficient contemporaneous

8

evidence that physical disability existed during the insured period); *Stokes v. Astrue*, 2010 WL 3326803, at *8 (S.D. Ind. Aug. 23, 2010) (holding that ALJ clearly erred because contemporaneous evidence that establishes a physical condition existed during the insured period is all the law requires); Soc. Sec. Ruling 83-20 ("In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and *other evidence* concerning impairment severity." (emphasis added)).

Here, Dr. Keralavarma's contemporaneous hospital notes from Claimant's April 20, 2010 visit indicate that Claimant had been experiencing swelling in his right leg for six months prior to that visit. (R. 467.) It is well-accepted that a patient's description of his conditions is taken into account when a doctor forms his medical opinion. *Griffo v. Colvin*, 2015 WL 8179941, at *4 (N.D. Ill. Dec. 7, 2015); *Worzalla v. Barhhart,* 311 F. Supp. 2d 782, 797 (E.D. Wis. 2004). Although an ALJ may discount a treating physician's opinion if it is "based solely on the patient's subjective complaints," the ALJ must give an explanation of how he reached such an inference. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Hampton v. Colvin*, 2013 WL 6577933, at *7 (N.D. Ill. Dec. 13, 2013). The ALJ did not do that here. The ALJ also did not inquire further of Dr. Keralavarma after he received his Letter. Claimant's complaints therefore were sufficient evidence contemporaneous with the date last insured to support Dr. Keralavarma's retroactive diagnosis on this record.

Claimant's testimony at the administrative hearing further corroborates Dr. Keralavarma's hospital notes. At the hearing, the Claimant testified that he reported the presence of leg pain and swelling six months prior to the diagnosis of DVT. (R. 59.) The ALJ stated that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms of leg pain and swelling. (R. 21.) The ALJ further found Claimant's

statements were not credible because "[t]he only medical evidence prior to December 31, 2009, the date last insured, indicates treatment and diagnoses of diabetes and joint paint related to a prior hip replacement." *Id.*

The ALJ's credibility analysis is flawed because the Letter was medical evidence that supported a finding of DVT prior to the date last insured. *See Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence [when determining credibility] and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.") Although this diagnosis came after the date last insured, "the critical date is the date of *onset* of disability, *not* the date of diagnosis." *Pierce v. Astrue,* 907 F. Supp. 2d 941, 951 (N.D. Ill. 2012) (quoting *Lichter v. Bowen,* 814 F. 2d 430, 435 (7th Cir. 1987)). Given the deficiencies in the ALJ's credibility determination, Claimant's testimony offers contemporaneous evidence that he suffered from DVT prior to the date last insured. *Pape v. Colvin,* 2014 WL 4186827, at *6 (W.D. Wis. Aug. 21, 2014).

Because the ALJ never mentions the Letter, it is impossible for this Court to determine whether the ALJ's decision rests upon substantial evidence. *Golembiewski,* 322 F.3d at 917; *see also Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003) (stating that where important evidence is unmentioned by ALJ, the court is left to wonder whether it was even considered). In light of the ALJ's failure to discuss this evidence, along with his questionable credibility findings, the Court concludes that his determination that Claimant was not disabled prior to the date last insured is not supported by substantial evidence.

This Court is not in the position to say that, based on the entire record, the Claimant should be awarded benefits. In fact, upon remand and after consideration of all relevant

evidence, an ALJ properly might decide that benefits should not be awarded in this case. On the record now before the Court, however, the Court also cannot say the ALJ's conclusion is supported by substantial evidence without some indication that the ALJ considered the post-hearing Letter from Claimant's treating physician.

### IV. CONCLUSION

For the reasons discussed above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 4, 2016